## JONES *v.* FRENCH, Appellant.

It is not the duty of the adjutant of a regiment to record the limits of a company.

The original order signed by the field officers, prescribing the limits of a company, is competent evidence of the limits, though not recorded.

The limits of a company must be territorial, and marked by definite boundaries.

The limits of a company were described as "beginning at Rochester line, and running up the Ten Rod road, so as to take all on the south-west side of said road, to New Durham line, and including the Messrs. Hurds, Mark Demeritt, Stephen Varney, &c., to be included in the 5th company; and on the north

side of said boundaries, to include the 3d company." *Held*, that the limits were not territorial, and that the boundaries of the 5th company were not sufficiently defined.

APPEAL from the judgment of a Justice of the Peace, imposing a fine for neglect of military duty.

To prove the limits of the military company, in which the defendant was alleged to be liable to do military duty, the plaintiff produced a book, which the Adjutant of the regiment testified was the orderly book of the regiment, and in which there was entered an order of the field officers prescribing the limits of this company. It was not pretended, that this was an original order, and it was not certified to be a copy or record of any order.

He also produced an original order, dated January 27, 1827, prescribing the limits of this company, and proved the signatures to be those of the field officers of the regiment at that date, but did not show that it had ever been recorded.

This order described the limits of the company in these words: " In the town of Farmington, they establish the boundaries as follows, to wit, beginning at Rochester line, and running up the Ten Rod road, so as to take all on the south-west side of said road to New Durham line, and including the Messrs. Hurds, Mark Demeritt, Stephen Varney, &c., to be included in the 5th company, and on the north side of said boundaries to include the 3rd company." It appears that some of the Hurds, Mark Demeritt, and Stephen Varney, resided on the north-east side of said road.

To prove the official character of the sergeant, by whom the defendant was warned, the plaintiff produced a warrant, signed by the Colonel, and countersigned by the Adjutant, dated May 1st, 1843.

The order of the Captain, for the company training, required the sergeant to warn the non-commissioned officers and privates of the company to appear " at Hiram Barker's store," without any other designation of the place. It appears that Hiram Barker's store was a well known locality in the town of Farmington, and within the limits of the third company, and that there was no other place so designated in the vicinity.

6 *

The defendant excepted to the evidence. A verdict was taken for the plaintiff, subject to the opinion of the court, as to the admissibility of the evidence, upon which judgment was to be rendered, or the verdict to be set aside and a new trial granted.

*Hobbs* and *Sanborn*, for the defendant. By the act of December 27th, 1792, N. H. Laws, 411, (ed. of 1797), and N. H. Laws, 244, (ed. of 1805), the militia of the State was organized into battalions and regiments.

By the act of December 28th, 1792, N. H. Laws, 425, (ed. of 1797) and N. H. Laws, 259, (ed. of 1805), it is provided that the militia of the State shall be divided into three divisions, and, if convenient, each division shall consist of two brigades, each brigade of four regiments, each regiment of two battalions of five companies, and each company of sixty-four privates, and that " the field officers of each and every regiment shall form and arrange the companies in their several regiments, from time to time, as they shall think the public good may require."

The same provisions as to the number of rank and file, and the duty of the field officers to arrange the companies, are enacted by the statute of December 22d, 1808, N. H. Laws, 287, §§ 5 and 28, (ed. of 1815), by the act of July 1, 1819, §§ 6 and 24, and by the act of December 22, 1820, §§ 7 and 25.

By none of these acts are the field officers authorized or required to prescribe the limits of companies, but to arrange them from time to time, so as to conform to the provisions of the act of December 8, 1792, and to similar provisions in subsequent acts.

By the act of 1829, previous acts relating to the militia were repealed. N. H. Laws, 392, (ed. of 1830) ; and the rules and regulations for the field exercises, &c., of the army of the United States were adopted. N. H. Laws, 406.

By this repeal, all arrangements of companies before made by the field officers, where there were no vested rights, ceased. Here, there were no vested rights.

The pretended order produced, was not admissible. It was secondary evidence only, and was admitted when no necessity

for its admission was shown. It could amount, at most, to nothing more than the declarations of the field officers.

By the act of 1829, the companies in the towns of Rochester, Farmington, and Milton are recognized as existing companies, and made to constitute the 39th regiment. N. H. Laws, 401, § 39, (ed. of 1830).

The limits of companies are required to be geographical, and they are to be recorded by the Adjutant. This is the first statute requiring the limits to be fixed and recorded. N. H. Laws, 386, § 12, (ed. of 1830); *Withington* v. *Eveleth*, 7 Pick. 106; *Perry* v. *Dover*, 12 Pick. 206; *Gray* v. *Sheldon*, 8 Verm. 403; *State* v. *Leonard*, 6 N. H. Rep. 435.

The fifth company in Farmington, included all south-west of the Ten Rod road, and the Hurds, Mark Demeritt, Stephen Varney, &c., on the north-east side of the road.

The third company included all the residue of Farmington on the north-east side of the road.

There were no geographical limits between the third company and the Hurds, Demeritt, Varney, &c.

*N.* and *G. N. Eastman*, for the plaintiff. The first position assumed by the counsel for the defendant in this case, is in substance as follows, viz.

That by no statute, previously to that of 1829, was there any provision requiring the limitation of militia companies, but only laws commanding the arrangement of such companies by the field officers of the different regiments, from time to time; and that all said arrangements on the passage of that act ceased, because the companies had acquired, in such arrangements, no vested rights.

To this objection we answer, that the order prescribing the limits of the third company of infantry, of which the defendant was a member, was dated January 27th, 1827, and was a limitation of said company, lawful under the statute of 1820. N. H. Laws, 1820, p. 305, § 25. This section speaks of the duty of the field officers of the different regiments to form and arrange the companies of their several regiments, and also, in the same

connection with forming and arranging companies, mention is made of the "limits" of companies. The inference, that to limit companies, was a part of the duty of these officers, is, therefore, irresistible ; no other construction can be placed upon this section of the statute. Also limits of companies are most distinctly recognized in section 27, of the statute aforesaid.

The boundaries of companies made under this statute continued, (if properly instituted, and the field officers of the different regiments so determined,) after the passage of the statute of 1829. This last named law required of those officers, in this particular, the same care and no more. Its language is " they (the field officers) are authorized to prescribe the limits to the several companies of their regiments, and the same to alter and modify as they shall think the public good may require. This statute is more exact than previous laws, in enjoining this duty upon the field officers of the different regiments, but its meaning is the same as that of the law of 1820, before referred to. Such being then the fact, these officers were not, we believe, bound by the statute of 1829, to renew limits legally and properly fixed, under said law of 1820. If in this conclusion we are correct, the court will, we think, presume in the absence of anything to the contrary in the regimental records, and from the fact that company officers acted under this order, that the field officers of the 39th regiment did, after the passage of said statute of 1829, adopt this limitation of January 27th, 1827, having a legal right so to do.

We do not enter into the question of vested rights, referred to in the argument of the defendant's counsel, because we perceive no necessity for contending for them, in a case like this. We stand not on vested rights, in the sense in which that phrase is generally used; we claim no property in these limits; we protect ourselves under the acts of the field officers of our regiment, legally and properly done under the law then existing, and rightfully continued by them in force, under a similar provision of a subsequent statute, which contained in effect, but a reënactment of that provision of law, authorizing the duty by them performed as aforesaid.

The second position of defendant's counsel is, that the order

introduced in evidence, was not admissible. It was (it is said) secondary evidence, admitted when no necessity for its admission was shown. It could amount to no more than the declarations of the field officers.

To this objection we reply, that the admission of said order was in accordance with the rules of evidence. It was first within the rule admitting on trials secondary evidence, supposing now that this was only evidence of that character.

We produced on trial the orderly book of the regiment, and there appeared recorded in it no " order of the field officers, prescribing the limits of this company" as an original order, or as a copy, or record of any order. The impossibility of our producing the best evidence is thereby exhibited. The omission of the best evidence is thus explained, and we had a right to introduce this evidence. 1 Starkie on Ev. 328 ; *Gale* v. *Currier*, 4 N. H. Rep. 169.

2d. Within the rule admitting other evidence than a record, when the record is a mere subsequent memorial or recognition of the fact directed to be recorded. 3 Starkie on Ev. 1044 ; *State* v. *Kean*, 10 N. H. Rep. 347 ; *Bassett* v. *Marshall*, 9 Mass. 312 ; *State* v. *Dwinnell*, 6 N. H. Rep. 168. *In the State* v. *Leonard*, 6 N. H. Rep. 435, there is nothing militating against this rule. His honor does not there say that the record of the discharge of a sergeant is the only evidence.

3d. Within the meaning of the law which holds its officers alone responsible for non-compliance on their part, with prescribed rules for official neglect. The justice of this is evident. The prosecuting officer here is without fault ; and shall he be injured by the neglect of the recording officer, to make his record ? This order having been filed among the regimental papers, there was a sufficient recording of the same for the purposes of this action. *Hardy* v. *Houston*, 2 N. H. Rep. 309 ; *Chase* v. *Hathaway*, 14 Mass. 222.

From the above it is apparent, we believe, that said order was properly admitted in evidence, there having been a legal necessity for that course, and that it did " amount" to " more than the declarations of the field officers," being sufficient evidence in every point of view.

The next position of defendant's counsel, is in fact, that the limits of companies are required to be geographical limits, and that no such limits exist between said third company, and said Hurds, Demeritt, &c.

We have examined all the authorities cited, excepting the Vermont case, and cannot discover how they affect this case to our disadvantage. Our limits in this order are territorial, not personal, and therefore are sustained by said authorities. By this order, the town of Farmington was completely divided into two military divisions, and the Ten Rod road was the dividing line, together, as we say, with the homesteads of certain individuals named in the order. This construction is entirely sustained by the language of the order immediately following the description of the limits of the fifth company, " and on the north side of said *boundaries* to include the third company." What boundaries are here meant? Individuals could not have been intended to be boundaries. The Ten Rod road and individuals of the names mentioned, could not be with any propriety called boundaries. Boundaries, in this connection, could not mean the said road, and the residences of the Messrs. Hurds, Demeritt, &c. What other definition can be given of that term than this? The Ten Rod road, and the homesteads occupied by the Messrs. Hurds, Demeritt, &c.

Then geographical limits did by that order exist between these companies.

In the cases mentioned below, will be found principles vindicating the above construction of the aforesaid order. *Haven* v. *Richardson*, 5 N. H. Rep. 113 ; *White* v. *Gray*, 9 N. H. Rep. 126.

GILCHRIST, C. J. It seems not to be the duty of the Adjutant to record the limits of the company. Rev. Stat. chap. 89, § 1, provides that he shall record orders, official communications, and returns. By chap. 84, § 1, after the limits have been prescribed, any alteration in them shall be recorded in the orderly book. These are the only provisions. But the original order was produced, and that is enough. It is as good evidence as the copy at least.

The limits should be territorial. Under the act of December 28th, 1805, Selectmen are empowered to define the limits of school districts, and it has always been considered that the limits must be territorial. Chap. 69, § 1, Rev. Stat., provides that the limits of school districts shall be defined by metes and bounds. And chap. 77, § 1, enacts that a person shall be liable to do military duty in the company within whose limits he may reside, clearly meaning territorial limits.

The limits here are not territorial. The limits of the 5th company are first defined, and then certain persons named are to be included. Where must a person reside to be liable to do duty in the 5th company ? Would it be sufficient if he should build a new house on some part of the farms of one of them ? But then he would not be included, for the only mode in which persons are included is by naming them, and he would not be named. Now as the limits of the two companies are given, they are bounded by each other. If one is uncertain and defective, both are so. And as we think the limits are defective, the action cannot be maintained.

The other questions in the case need not be inquired into.

*Verdict set aside.*

